**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOLYN DAVID REAM, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 26-CV-3400 |
| | : | |
| BERKS COUNTY JAIL/PRISON, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

COSTELLO, J.                                                             JULY 6, 2026

Currently before the Court is a Second Amended Complaint ("SAC") filed by Solyn

David Ream, a sentenced prisoner currently incarcerated at the Berks County Jail ("BCJ"), in

which he claims that correctional and medical officials were deliberately indifferent to his

serious medical needs when they housed him on the top tier of the facility and then failed to

adequately treat an injury to his neck that he sustained when he suffered a seizure on a staircase.

Since the SAC does not cure the defects the Court previously identified when it dismissed

Ream's initial Complaint upon screening, *Ream v. Berks Cnty. Jail/Prison*, No. 26-3400, 2026

WL 1507493, at *1 (E.D. Pa. May 29, 2026), the Court will dismiss the SAC.

**I.      FACTUAL ALLEGATIONS**[1]

Ream's SAC names the following Defendants:  (1) Prime Care Medical, Inc., the medical

contractor at BJC; (2) Dr. Theodore Dimitriou; (3) Dr. Lauren "Doe"; (4) "John Doe," identified

---

[1] The following allegations are taken from Ream's SAC (ECF No. 10), which is currently the governing pleading in this case.  *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)).  The Court adopts the sequential pagination supplied to the SAC by the CM/ECF docketing system.

1

as a "2nd Shift Corrections Officer" at BCJ; (5) Corrections Officer Farnsworth; (6) Berks County; and (7) Susie "Doe," identified as "Prime Care Medical Inc. Admin."[2]  (SAC at 2-5.) Ream alleges that on May 26, 2025, Officer Doe "acting on pre-arranged order of prisoner placement by [a] superior, placed [Ream] in cell 208, K-Block/upper tier," in accordance with applicable regulations, which Ream claims were "in conflict with DOJ Bottom Bunk Bottom Tier Orders." (*Id.* at 6.)  Ream experienced a seizure and fell down the staircase, injuring his neck. (*Id.*)  He was placed in a "crash cart," which he claims exacerbated his injury, then was "thrown bodily into cell N-105 by C.O. Farnsworth, with intent to [cause] further harm." (*Id.*)

Ream claims that he was "not assessed" and was not given support for his neck after the fall, despite complaining of "severe neck pain." (*Id.* at 7.)  He contends he was "neglected for 5 days, being refused any medical care," until Dr. Lauren "Doe" ordered x-rays, which revealed that his neck was broken, at which point he was given a neck brace. (*Id.*)  Ream was never seen by a "spinal specialist" despite his repeated requests. (*Id.*)  He also alleges that he was not seen for pain management even though his pain level "was and has remained a 10 out of 10." (*Id.*) Dr. Dimitriou allegedly told Ream that he "better not sue." (*Id.*)

---

[2] It appears Ream sued the individual Defendants in their individual and official capacities. (SAC at 3.)  Suing an officer or employee in his official capacity is essentially a means of pleading claims against the entity that employs the officer. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Since Ream's official capacity claims against the individual Defendants are duplicative of his claims against those Defendants' employers, whom he also sued, the Court will dismiss them. *See, e.g.*, *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant.").

Ream brings this civil action pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs and also appears to pursue malpractice claims.[3]  He also "believe[s] the jail, or persons employed at [BCJ], and also Prime Care Inc. [are] retaliating" by not providing him the care he needs.  (*Id.* at 14.)   He seeks millions of dollars in damages "for each of the 5 days [he] was neglected and denied medical/specialized care." (*Id.*)  He also seeks "to be seen by a neuro-spinal specialist." (*Id.*)

## II.   STANDARD OF REVIEW

Since Ream is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   At the screening stage, the Court accepts the facts alleged in the *pro se* SAC as true, draws all reasonable inferences in Ream's favor, and asks only whether the SAC, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556

---

[3] To the extent Ream alludes to other legal concepts, (*see* SAC at 3), he has not supported any other bases for a claim and his conclusory, passing references are insufficient for the Court to consider. *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

U.S. at 678.  As Ream is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

### III.   DISCUSSION

#### A.   Constitutional Claims

Ream brings his constitutional claims pursuant to 42 U.S.C. § 1983.  The legal principles governing Ream's claims were explained when the Court screened Ream's initial Complaint, *Ream*, 2026 WL 1507493, at *2-3, and the Court will repeat them here.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)).  To proceed against a municipal entity such as a county or a county contractor under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), by specifically stating "what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).  A plaintiff may also proceed against a municipal entity by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his

serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention."  *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."  *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073).  This standard is met when a delay or denial of medically-necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm.  *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026).  In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  Inadequate care may nevertheless give rise to a deliberate indifference claim when a defendant "act[s] with the requisite state of mind when providing that inadequate care."  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017); *see also Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) ("[P]rison officials

may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition" (quotations and citations omitted)).

"Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need." *Clark v. Albert*, No. 21-04096, 2022 WL 4360546, at *3 (E.D. Pa. Sept. 20, 2022) (quoting *Saunders v. GEO Grp.*, No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019)). For instance, a defendant acts with deliberate indifference if he "recklessly disregard[s] the need" for a particular housing assignment by ignoring the recommendation of a consulting physician. *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (*per curiam*); *see also Hetsberger v. Essex Cnty. Corr.*, 2021 WL 4727476, at *1 (D.N.J. 2021) (concluding that a plaintiff stated a claim to relief where he alleged that correctional defendants "refused to request Plaintiff be moved to a bottom bunk cell even though there are doctor's orders that he be placed in a bottom bunk" (citing *Wall*, 639 F. App'x at 95)); *Cameron v. Swartz*, No. 17-0816, 2020 WL 7496317, at *6 (W.D. Pa. Nov. 19, 2020) ("Refusal to honor bottom bunk and floor passes can be interpreted as deliberate indifference to the need for medical treatment prescribed by prison authorities." (citations omitted)), *report and recommendation adopted*, 2020 WL 7490229 (W.D. Pa. Dec. 21, 2020); *Nichols v. Byrne*, No. 15-0527, 2016 WL 4921008, at *3-4 (E.D. Pa. Sept. 14, 2016) (concluding that a plaintiff stated a claim to relief where he alleged that he "was issued a lower bunk pass by the medical staff," but, although plaintiff showed them the pass, the officials responsible for cell assignments "ignored the pass and forced him to sleep on the top bunk").

Ream's allegations about his placement on the top tier of BCJ are even less developed than those in his initial Complaint. He alleges only that a John Doe Correctional officer placed

6

him on the top bunk consistent with applicable regulations and at the direction of a supervisor. (SAC at 6.)  He does not allege, as he did in the initial Complaint, that he required a bottom tier assignment per a doctor's order due to health conditions.  In any event, as before, Ream "does not provide additional allegations about any discussions he had with this officer or explain other circumstances from which the Court could infer that this officer 'knew of and disregarded' the doctor's order for Ream to be housed on a bottom tier in a bottom bunk due to his health conditions." *Ream*, 2026 WL 1507493, at *3.

As for Ream's claims against the Defendants apparently responsible for his medical care, Ream does not allege facts supporting any inference that any of these defendants acted with deliberate indifference during the five days after his fall or otherwise.  He does not describe his interactions with these defendants, including by explaining what they knew about his condition, what treatment they prescribed or did not prescribe, and what other circumstances impacted Ream's care.  Indeed, he does not describe Defendant Susie Doe's involvement at all.

Ream describes only three interactions with Defendants following his fall.  First, he claims that Defendant Officer Farnsworth "threw" him into a cell "with intent to [cause] further harm."  (SAC at 7.)  This allegation is vague and undeveloped, so it does not support a deliberate indifference claim.  Second, Ream alleges that Dr. Lauren "Doe" ordered x-rays and offered him a neck brace upon learning his neck was broken.  This allegation reflects that Dr. Doe provided care; there is no suggestion that she was otherwise involved in Ream's care or that she refused to provide care she knew that he required.  Third, Ream alleges that Dr. Dimitriou would not provide him with care and told him not to sue, but Ream does not specifically explain how Dr. Dimitriou was involved in his course of care, what treatment decisions he made, what he knew about Ream's conditions and when, and how his conduct amounts to deliberate indifference.  In

7

sum, Ream's underdeveloped allegations do not support a plausible inference of deliberate indifference.[4]  Similarly, Ream's allegation that he believes he is being retaliated against does not support a First Amendment retaliation claim, to the extent he was trying to bring one.  (*See* SAC at 14); *see also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (explaining that, to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action); *Wallace v. Pa. Dep't of Corr.*, No. 24-152, 2025 WL 1568665, at *7 (W.D. Pa. June 3, 2025) ("Using the word 'retaliation' or some form thereof does not allege retaliation.").

## B.    State Law Claims

The Court also construes the SAC as raising medical malpractice claims under state law, but, having dismissed Ream's federal law claims, the Court lacks an independent basis for jurisdiction over these claims.  District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citations omitted).  For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is

---

[4] This conclusion is fatal to Ream's claims for municipal liability.  However, those claims fail for the alternative reason that he has not sufficiently pled a policy or custom that caused the claimed constitutional violations.

physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). Ream does not clearly plead the parties' citizenship, although it appears likely that he and at least one of the Defendants are Pennsylvania citizens, thus defeating complete diversity. Accordingly, the Court cannot exercise diversity jurisdiction over any medical malpractice claims or other state law claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the SAC. Since Ream was already provided an opportunity to cure the defects in his claims and was unable to do so, the Court concludes that further attempts at amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). An Order follows, which dismisses this case.

BY THE COURT:

_____
**MARY KAY COSTELLO, J.**

9